UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:24-cv-160-LLK

TIMOTHY R.[1]                                                                    PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                             DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

On July 3, 2018, Plaintiff initially filed a Complaint seeking judicial review, pursuant to

42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying, in part, his claim for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act in Civil Action

Number 5:18-cv-103-LLK. After this Court remanded the matter to the agency with instructions

for further consideration, the Plaintiff was granted a second hearing. On December 23, 2020,

Administrative Law Judge (ALJ) Maribeth McMahon issued an unfavorable Decision, and on

October 16, 2024, Plaintiff filed the present Complaint seeking judicial review, pursuant to 42

U.S.C. § 405(g), of the Final Decision of the Commissioner denying his claim for DIB. [DN 1].[2]

Plaintiff's Fact and Law Summary is located at DN 13, and the Commissioner's Fact and Law

Summary is located at DN 15. The parties have consented to the jurisdiction of the undersigned

United States Magistrate Judge to determine this case, with any subsequent appeal to be filed

directly to the United States Court of Appeals for the Sixth Circuit. [DN 8]. No Reply was filed,

and the matter is now ripe for adjudication.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

After examining the administrative record, the arguments of the parties, and the applicable authorities, the undersigned is of the opinion that the Administrative Law Judge's (ALJ's) Decision is unsupported by substantial evidence and does not comport with applicable law. For the reasons set forth below, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) to the Commissioner for calculation and payment of past-due Title II benefits for the closed period of May 21, 2015, to April 3, 2017.

## I. BACKGROUND

**Administrative History**. Plaintiff initially filed his Title II DIB application on May 26, 2015, [DN 5] at 162, alleging his disability began May 21, 2015, as a result of problems with his back, neck, and heart. [DN 5] at 183. He was 53 years old at the time of filing. [DN 5] at 162. His claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The hearing was conducted on June 20, 2017, with attorney Donna Thornton-Green attending on Plaintiff's behalf. The hearing was conducted by Administrative Law Judge Maribeth McMahon. Also attending and testifying during the hearing was impartial vocational expert Leslie F. Lloyd. On November 11, 2017, the ALJ issued a partially favorable Decision finding Plaintiff was not disabled between his alleged onset date of May 21, 2015, to April 3, 2017 (the day before his 55th birthday), but by application of Medical-Vocational Rule 202.06 he was found to be disabled as of his 55th birthday. [DN 5] at 30.

On January 11, 2018, Plaintiff sought review of the denial portion of the partially unfavorable Decision by the Appeals Council [DN 5] at 161; on May 5, 2018, the Appeals Council denied Plaintiff's request for review. [DN 5] at 6. The ALJ's Decision became the final Decision of

the Commissioner subject to judicial review in this Court, and Plaintiff's (first) appeal to this Court

followed. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

Upon review in this Court, the Plaintiff was successful in achieving a remand to the Social

Security Administration for further consideration of the vocational impact of his urinary urgency

and because the ALJ failed to give good reasons for discounting Dr. Patel's opinions [*Reynolds v.*

*Berryhill*, No. 5:18-cv-103-LLK, DN 22] at 1, 3. The Appeals Council issued an Affirmation and

Order on August 24, 2019, remanding the matter to the Social Security Administration and

specifically instructing as follows:

> The United States District Court for the Western District of Kentucky (Civil Action Number 5:18-CV-00103) has remanded this case to the Commissioner of Social Security for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act.

> The Appeals Council notes that the hearing decision before the U.S. District Court was partially favorable, finding the claimant disabled beginning on April 4, 2017 and **limits the period under review to the period before April 4, 2017.**

> Therefore, the Appeals Council vacates the unfavorable portion of the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court **for the period before April 4, 2017.**

> In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision for the period before April 4, 2017.

Affirmation and Order of Appeals Council, [DN 5] at 911. (Emphasis added.)

ALJ McMahon twice sent Notice of Hearing letters for the re-hearing on June 5, 2020,

each of which included language that did not limit the scope of the remand inquiry as directed by

the Appeals Counsel.[3] Plaintiff's counsel objected to each Notice of Hearing issued, as the notices

---

[3] March 5, 2020, Notice of Hearing, [DN 5] at 818; July 23, 2020, Notice of Hearing, [DN 5] at 978.

did not limit the scope of the remand hearing to the issues and closed period as instructed by the

Appeals Council.[4]

Upon remand, ALJ McMahon conducted an unorthodox[5] and argumentative[6] second

hearing via telephone on October 15, 2020. [DN 5] at 839-869. Attorney Donna Thornton-Green

---

[4] October 8, 2020, Letter to Judge McMahon objecting to the second Notice of Hearing. [DN 5] at 997.

[5] Despite the closed period at issue and the specific directions contained in the Appeals Council Affirmation and Order [DN 5] at 911, the ALJ twice noticed the hearing as though Plaintiff's entire case was to be reconsidered. [DN 5] at 818 and 978. Plaintiff's counsel twice filed objections to the notices of hearing. At the hearing, the ALJ conceded that the remand instructions limited review to the period of May 2015 to April 2017, limited Plaintiff's counsel to questioning Plaintiff only about that period, and then proceeded to question Plaintiff about his current (10/15/20) conditions and limitations over the objections of Plaintiff's counsel.

ALJ:    I am going to ask you about your objections to the Notice because I don't want there to be any confusion. I tend to agree with you. This appeal, this remand does not disturb the payment portion of Mr. Reynolds' earlier decision. **We are just going back over a period of time, I think from May of 2015 to April of 2017**. Is that your understanding?

ATTY:   Yes.

October 15, 2020, Hearing, [DN 5] at 840-41. (Emphasis added.)

ALJ:    … I think you also made this argument earlier, but is it your understanding that the Appeals Council did not remand or reverse the pay portion of this decision? **We're only dealing with a certain timeframe I think of May 2015 through April 2017** after which time Mr. Reynolds is receiving benefits. Is that your understanding?

ATTY:   Yes Judge, that is correct. That is based on the court order, as well as the Appeals Council. We are agreeable to proceeding with that period and waiver further reading.

ALJ:    Fantastic.

October 15, 2020, Hearing [DN 5] at 841. (Emphasis added.)

ALJ:    … Then, by way of opening statement, tell me what your theory is, especially regarding this little timeframe of the onset date to the decision, the date of the pay and any exhibit you think I should review in the medically objective findings in support of that theory?

ATTY:   Judge, I see this hearing as a very narrow issue in addressing Mr. Reynolds need for restroom access and consideration of his treating physician's opinion, Dr. Patel, which I believe that is 15F and 13F. . . . Considering both the frequent access and Dr. Patel's restrictions, he would not be able to perform light work for the period in question. I think you awarded him as of age 55. And, you're looking at basically a period where he is closely approaching advanced age as opposed to when he became advanced age. We did not anticipate a sole [sic] testimony, we anticipated addressing those specific issues, Judge.

ALJ:    That's fine. **If you could limit your inquiry to how Mr. Reynolds was feeling and what was going on with him during that year and a half**, that will be fine with me.

October 15, 2020, Hearing [DN 5] at 842-43. (Emphasis added.)

[6] After limiting the October 15, 2020, Hearing to the timeframe of May 2015 to April 2017, and limiting counsel to questioning Plaintiff only about that timeframe, the ALJ questioned Plaintiff extensively about his current, present day (10/15/20) medical conditions and treatment:

ALJ:    When Dr. Patel treats you, does he check to see if the cancer has returned or does he send you somewhere to get that cancer checked?

P:      He does blood work.

ALJ:    Say that again, sir.

P:      He does blood work.

ALJ:    He does blood work?

P:      Yes.

represented Plaintiff at the hearing. Norma Sticklin, an impartial vocational expert, also participated in the hearing. [DN 5] at 802. On December 23, 2020, ALJ McMahon issued an Unfavorable Decision in which she made different severe impairment and RFC findings from the First Decision and again found Plaintiff not disabled for the closed period of May 21, 2015, through April 3, 2017.

Plaintiff timely requested review of the ALJ's December 23, 2020, unfavorable Decision at the Appeals Council. [DN 5] at 998-1000. On August 16, 2024 – **some three years and nine months later** – the Appeals Council denied Plaintiff's request for review of the ALJ's Decision. [DN 5] at 789-792. (Emphasis added.) At that point, the ALJ's December 23, 2020, Decision (Second Decision) became the final Decision of the Commissioner and subject to review in this Court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). Plaintiff filed the present action on October 16, 2024. [DN 1].

**The ALJ's Second Decision**. The ALJ's Second Decision, [DN 5] at 802-812, denying Plaintiff's claim for DIB Title II benefits for the period of May 15, 2015, to April 3, 2017, was based upon the five-step sequential evaluation process which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018, and that he did not engage in substantial gainful activity during the period from his alleged onset date of May 21, 2015, through April 3, 2017, the period under consideration (20 CFR 404.1571 *et seq.*).

---

ALJ:    Does he ever order a scan or an x-ray or an ultrasound?
P:      No.
ATTY:   Judge, I'm sorry, this is all in the record, his treatment that he had. It's all there. I'm not sure –
ALJ:    Do you have objections to my questions? Do you have an objection to my questioning?
ATTY:   I understand, but the ultrasound –
ALJ:    **I'm trying to make an argument too**. (Emphasis added.)
October 15, 2020, Hearing, [DN 5] at 856-857.

At Step Two, the ALJ found that through April 3, 2017, the claimant had the following severe impairments: degenerative disc disease with radiculopathy to the left upper extremity, ischemic heart disease status post myocardial infarction, a kidney disorder, and obesity (20 CFR 404.1520(c)).[7]

At Step Three, the ALJ found that through April 3, 2017, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c). The ALJ made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that, through April 3, 2017, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could frequently reach in any direction with the left upper extremity, but had unlimited reaching with the dominant right upper extremity. He could stand/sit/walk each up to one hour at a time, for a total of up to six hours each in an eight-hour workday, with normal breaks. He should never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crouch, crawl, balance, and climb ramps/stairs. He should never be exposed to unprotected heights or dangerous machinery, vibrations, or vibratory tools.[8]

---

[7] The ALJ's First Decision made the following findings at Step Two:
    Since the alleged onset date of disability, May 21, 2015, the claimant has had the following severe impairments: degenerative disc disease, radiating numbness in the left upper extremity, myocardial infarction, ischemic heart disease, kidney disorder, and bladder cancer (20 CFR 404.1520(c)). First Decision, [DN 5] at 24. Thus, the Second Decision omits bladder cancer as a severe impairment but adds obesity.

[8] The ALJ's First Decision made the following RFC findings:
    After careful consideration of the entire record, the undersigned finds that since May 21, 2015, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can frequently reach in all directions with the left upper extremity, but has unlimited reaching with the dominant right upper extremity. He can sit, stand and walk, each for one hour at a time, for a total of six hours each in an eight-hour workday with normal breaks. He can occasionally stoop, kneel, crouch, crawl and balance. He can never be exposed to vibrations, unprotected heights or dangerous machinery. First Decision, [DN 5] at 25. Thus, the Second Decision changes Plaintiff's ability to climb ladders, ropes and scaffolds from occasionally to never.

Second Decision, [DN 5] at 806-807.

Fourth, the ALJ found that through April 3, 2017, the claimant was unable to perform any past relevant work (20 CFR 404.1565). The ALJ further found that Plaintiff was born on April 4, 1962 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date, and that he remained in this age category through April 3, 2017 (20 CFR 404.1563); that claimant has at least a high school education (20 CFR 404.1564); and that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

At Step Five, the ALJ found that through April 3, 2017, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)) (including cashier, storage rental clerk, and routing clerk) [DN 5] at 811; and therefore the claimant was not under a disability, as defined in the Social Security Act, at any time from May 21, 2015, the alleged onset date, through April 3, 2017, the period under consideration (20 CFR 404.1520(g)).

## II. APPLICABLE LAW

**Standard of Review**. Judicial review of an ALJ's Decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual determinations and whether the ALJ properly applied relevant legal standards. *Jordan v. Comm'r of Soc. Sec*., 548 F.3d 417, 422 (6th Cir. 2008); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). This Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where the error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**The Treating Physician Rule**. As Plaintiff filed his application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record. The regulations require ALJs to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). The process for assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. *Id*. If controlling weight is not assigned to the treating source's opinion, the ALJ must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source. *Id*.

8

The Sixth Circuit provided the following explanation regarding the standards for weighing medical opinions under the "treating physician rule" regulatory hierarchy:

As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), id. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), id. § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Social Security Ruling No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the]case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id*., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id*. § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id*. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Se. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. Id. § 404.1527(c)(6).

*Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serve to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (citing *Rogers v. Comm'r*, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" *Cole*, 661 F.3d at 937. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. *Id*. at 939 (citations omitted).

This Court made the following findings of fact in its July 8, 2019, Memorandum Opinion and Order remanding this case in Civil Action Number 5:18-cv-103-LLK:

> Plaintiff suffers from a congenital kidney/bladder condition. (Administrative Record ("AR") at 68, 282.)[9] He testified that "I have three kidneys." (AR at 68). The ALJ noted that a "CT scan revealed a duplicated right renal collection system with two separate non-dilated ureters [and] a left renal cyst." (AR at 22 referencing AR at 282). Plaintiff has been diagnosed with bladder cancer. (AR at 19.) The ALJ acknowledged that Plaintiff suffers from a severe, or vocationally significant, kidney disorder and bladder cancer. (*Id*.)

> Plaintiff testified that "I just have pain in my kidneys"; "I'll probably go to the bathroom 12 to 15 times a day"; it "comes on quickly [so] I've got to stay close to a restroom." (AR at 46-47.) The VE testified that Plaintiff would be unemployable if he must "always have access to a bathroom close by" and "needs to go whenever [he] need[s] to go" (i.e., not just during scheduled breaks). (AR at 68.) The VE added that "I have worked with bladder and prostate cancer individuals and they cannot sustain employment because of their leaving the work station too often." (AR at 69.) "It affects productivity and they eventually get terminated." (*Id*.)

> The ALJ found that Plaintiff became disabled on April 4, 2018 (his fifty-fifth birthday) based on a direct application of Rule 202.06 of Appendix 2 of the regulations. (AR at 25.) For the closed period between May 21, 2015 (when Plaintiff alleges he became disabled) through April 3, 2017, the ALJ found that Plaintiff was not disabled because he retained the ability to perform a significant number of jobs in the national economy such as elevator operator, general office helper, assembler, and cashier. (AR at 24.) The ALJ based this finding of non-

---

[9] Administrative Record citations from this Court's July 8, 2019, Memorandum Opinion and Order in Civil Action Number 5:18cv103 will differ from those in the present Administrative Record (Civil Action Number 5:24cv160).

disability during the closed period upon a vocational hypothetical that explicitly accommodated no unscheduled bathroom breaks. (AR at 70-71.)

District Court Remand, [DN 5] at 903-04.

### III.  DISCUSSION

**Plaintiff's Arguments**. Plaintiff argues that the ALJ's RFC failed to conform to the treating physician rule which applies to this case. In addition, he argues that the ALJ erred in eliminating bladder cancer as a severe impairment in the Second Decision.

1.      The ALJ's Residual Functional Capacity findings fail to conform to the treating physician rule which applies in this case.

As noted above, because Plaintiff filed his DIB claim in May of 2015, the old "treating physician rule" regulations found in 20 C.F.R. § 404.1527 for weighing medical opinions apply in this case. For claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depends upon the medical source that offered it. There were three types of acceptable medical sources in the "physician hierarchy" of the prior regulations: non-examining sources; examining but non-treating sources; and treating sources. 20 C.F.R. §§ 404.1527. Under the old system, a treating physician's opinion was given controlling weight if it was "well-supported by medically acceptable clinical and laboratory techniques" and not inconsistent with the other substantial evidence in the record. If the treating physician's opinion could not be given controlling weight, the ALJ was required to provide "good reasons" for discounting the weight given to a treating source opinion. The treating physician rule requires the ALJ to generally give greater deference to the opinions of a treating physician over the opinions of a non-treating, non-examining physician because:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

**Plaintiff's notable medical history**. Plaintiff Timothy R. worked for a tire company in his twenties and suffered a lifting back injury and resulting herniated L-4 disc which required laminectomy and diskectomy surgical repair in 1990. [DN 5] at 1055, 1057. Some four years later, he was found to have multiple level herniations in the lumbar spine requiring lumbar decompression, disc excision at L4-5, and fusion from L4 to S1 with Rogozinski rod placement. [DN 5] at 1061. Plaintiff's decades of physical work in construction – painting, hanging drywall, and doing carpentry – resulted in continued back pain. Plaintiff's primary care physician Dr. Richard Smith managed his pain with Lortabs; he eventually had a trial of pain management from 2011 to 2013.

Records also indicate that Plaintiff was treated by Dr. Trevathan for bladder cancer (non-invasive papillary carcinoma) in 2008. He was treated by Dr. Trevathan for several episodes of gross hematuria and right flank pain and was admitted to the hospital in April 2014 with pain and hematuria; a CT scan showed a calcification in the right ureter for which he received a stent. He was found to have the congenital anomaly of two right kidneys, along with a mass on his right kidney. Dr. Trevathan's records indicate that he "strongly suspected the patient might have transitional cell carcinoma in the right kidney." He has seen urology specialists at Vanderbilt for his bladder and kidney conditions. [DN 5] at 287-292. In addition to pain in his kidneys and episodes of blood in his urine, Plaintiff testified that his bladder and kidney conditions result in the frequent need to urinate – without warning – some 12-15 times a day. [DN 5] at 52.

By 2011 Plaintiff's primary care physician Dr. David [Richard] Smith had retired, and Dr. Mae Fischer of the practice assumed his care and referred him to Pain Management Center of

Paducah. [DN 5] at 496. His chief complaint was "My back and neck hurt." *Id*. He indicated that he suffers from constant neck pain with radiation to the left shoulder and upper arm, and that chiropractic and physical therapy treatments had been unsuccessful in easing his neck pain. In addition, the records indicate constant low back pain with numbness in his left leg that is worse upon standing along with occasional painful sciatica in his right leg. Dr. Smith had prescribed Lortabs to manage his pain. [DN 5] at 496-97. He was prescribed Mobic, Lortab and Neurontin, but neural block injection therapy was ruled out as his insurance did not cover ASC treatments. [DN 5] at 506-07. A September 8, 2011, CT of his cervical spine showed "[t]here is mild arthritic change at the C1-C2 articulation as well as some loss of the normal cervical lordosis. Early degenerative disc disease with a vacuum disc phenomenon is noted at 4-C5 as well as at C5-C6." [DN 5] at 520.

In June of 2013, Plaintiff had a heart attack and underwent a stent placement by Dr. Ford. He was diagnosed with coronary artery disease. Plaintiff testified that since the heart attack, he has no stamina and to tires easily. [DN 5] at 53. Plaintiff began seeing Dr. Bharat Patel as his primary care physician in July of 2013, and Dr. Patel took over Plaintiff's pain management, cardiac care, and general medical care. [DN 5] at 280.

Dr. Patel's records are a combination of a pre-printed form with handwritten cursive entries (by numerous hands) and with liberal use of circles, check marks, arrows, abbreviations and symbols. The records show that Dr. Patel saw Plaintiff on a monthly or bi-monthly schedule: 7/3/13, 7/26/13, 9/20/13, 11/14/13, 2/13/14, 5/14/14, 7/15/14, 8/27/14, 10/28/14, 1/2/15, 3/9/15, 4/20/15, 4/27/15, 5/8/15, 7/13/15, 9/9/15, 9/25/15, 11/6/15, 12/17/15, 12/30/15, 2/24/16, 4/25/16, 6/21/16, 8/19/16, 10/14/16, 12/19/16, 2/16/17, 4/13/17, and include diagnostic and lab reports:

3/14/17 Cervical Spine Radiographs showing multilevel degenerative changes in the neck with loss of disc height at C4-5 and C5-6, mild endplate osteophytes, uncovertebral hypertrophy and facet arthropathy.

3/14/17 Lumbar Spine Radiographs showing lumbar fusion and laminectomy changes from L4-S1 … generally mild loss of disc height throughout lower thoracic and lumbar spine with multilevel endplate osteophyte formation and facet arthropathy.

3/14/17 Thoracic Spine Radiographs showing bridging lateral and anterior osteophytic spurring of the spine, subtle scoliosis, mild to moderate diffuse degenerative endplate changes.

5/12/15 Carotid Ultrasound due to dizziness and weakness;

5/14/14 Graded Exercise Test Report; 5/14/14 12 Lead Report;

12/8/13 Cervical Spine CT showing moderate central canal stenosis at C4-C5, mild central canal stenosis at C2-C3 and C3-C4 and multilevel neural foramen stenosis;

12/8/13 Brain CT;

7/26/13, 11/14/13, 08/28/14, 01/02/15, 05/08/15, 09/09/15 Quest Diagnostic Lab Reports.

[DN 5] at 748-767.

**Treating Physician Dr. Bharat Patel's Opinions.** Dr. Patel provided an Attending Physicians Restrictions assessment dated February 16, 2017. [DN 5] at 768. In his report, he indicated that Plaintiff would be unable to complete a forty-hour work week on a sustained basis; he would be unable to alternatively stand/sit/walk for less than two hours; he needs to constantly rest, recline, or lie down, in an eight hour work day; he can only occasionally lift 1-10 pounds and rarely/never more than 10 pounds; only occasionally reach/handle/finger; he can rarely/never climb, balance, stoop, crouch, kneel, and crawl; he should never be around heights, temperature

14

extremes, moving machinery, respiratory irritants, humidity, and vibration; and that his impairments would result in absences of more than four days per month. Dr. Patel included a handwritten narrative in the Diagnoses assessment section:

> Severe DDD [degenerative disc disease] of entire spine, S/P [status post] lumbar surgery, CAD [coronary artery disease] with stents, radiculopathy with neuropathy of both legs, tach and HTN [tachycardia and hypertension], depression, cancer of bladder, dyslipidemia. Patient is totally disabled with no chance of recovery.

[DN 5] at 768.

In addition to the Attending Physicians Restrictions form, Dr. Patel submitted a January 24, 2018, letter wherein he indicates that he has treated Plaintiff since July of 2013, noting "He has been disabled since 2015 with his multiple medical problems. He has severe degenerative joint disease of spine, coronary artery disease, neuropathy, and many other medical conditions." These treating provider opinions from Dr. Patel were each addressed in ALJ McMahon's Second Decision, but the January 24, 2018 letter is given little regard.

**State Agency Physician Opinions**. The ALJ's Second Decision declines to give treating physician Dr. Patel's opinions controlling weight and instead credits the non-examining state agency medical consultant whose opinion was made in July of 2015 with "some weight." Plaintiff notes that the non-examining state agency medical consultant was Dr. B. Rock Oh, a board certified Ob/Gyn who reviewed Exhibits 1F and 4F. Dr. Oh's July 17, 2015, Disability Determination Explanation at the initial level was as follows:

> The claimant is a 53 year old male who alleges back, neck and heart problems. Per MER the claimant has a history of MI and had a cardiac stent placed on 6/12/13. Duplex conducted on 5/12/15 by Dr. Fred Harris reveals plaque and at least 50% stenosis. An exercise test conducted by Dr. Bharat Patel on 5/14/15[10] reveals the claimant has 98% oxygen saturation w/ exercise on room air. An exam conducted on 5/11/15 by Dr. Jack Mayo reveals the claimant has normal cardiovascular rate. He has no musculoskeletal deformities, no cyanosis, no clubbing, no edema, and

___

[10] Plaintiff's brief points out that this is a typo; the exercise test conducted by Dr. Patel was dated May 14, 2014. [DN 13] at 16.

gait is normal. There is no radiography supporting the existence of osteoarthritic degenerative changes and no musculoskeletal impairments listed in HPI or ROS.

Disability Determination Explanation, [DN 5] at 82-83; RFC Additional Explanation, [DN 5] at 84-85.

Dr. Oh further explains that Plaintiff has two medically determinable impairments, listed as 4140 Ischemic Heart Disease and 4100 Acute Myocardial Infarction. [DN 5] at 83. In the Assessment of Policy Issues, Dr. Oh indicates that "ADLs have not been received as of 7/16/15" and that "[t]here is no indication that there is medical or other opinion evidence." [DN 5] at 84. Based upon his review, Dr. Oh assessed an RFC with exertional limitations consistent with light work: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of About 6 hours in an 8-hour workday; push and/or pull (including hand and/or foot controls) unlimited, other than shown, for lift and/or carry. No postural, manipulative, visual, communicative or environmental limitations were assigned. *Id*.

At the Reconsideration level, the Disability Determination Explanation indicates that evidence of Plaintiff's work history, ADLs and Dr. Patel's records was reviewed, and 2960 Affective Disorders was added to Plaintiff's impairment list as non-severe. In reviewing the new mental impairment, state agency medical consultant Mercedes DeCubas Ph.D. assigned only mild impairment in maintaining concentration, persistence or pace in the "B criteria" and that his "[a]llegations/report of severity appear to be mostly supported by the available evidence; full credibility is assigned." [DN 5] at 93. P. Saranga M.D. reviewed the additional evidence  of "neck back pain no radiculopathy" and added postural limitations to Plaintiff's RFC to include unlimited balancing and kneeling; occasional climbing ladders/ropes/scaffolds; and frequently climbing ramps/stairs, stooping, crouching and crawling. Environmental limitations to avoid concentrated

exposure to extreme heat and cold were added. [DN 5] at 95. The RFC – Additional Explanation for Dr. Saranga's October 4, 2015, reconsideration narrative remains exactly as Dr. Oh drafted it. [DN 5] at 96. The Assessment of Vocational Factors at both the initial and reconsideration levels indicates that past relevant work is irrelevant because the applicable Medical-Vocational Guidelines would direct a finding of "not disabled" given Plaintiff's age, education, and RFC. Therefore, the individual can adjust to other work. *Id*.

Two years after initially filing for disability benefits, Plaintiff attended his first hearing on June 20, 2017. In the hearing, ALJ McMahon notably recognized the dearth of medical evidence available to the prior decision-making state agency medical consultants:

ALJ:     The application and some of the earlier decisions were based on the heart. Ischemic heart disease was an impairment noted. Acute myocardial infarction was in – was an impairment noted and this would be alleged from the 2015 onset date. The back problems in all the records that you have supplied come – come after that and are almost new evidence to be considered in terms of the original applications. If you would like to inquire of your client, go right ahead.

ATTY:   If I may address that, I came into the picture November of 2015 and after meeting with him and him explaining all his problems that's why we submitted the –

ALJ:     You, you helped enhance the – yeah, because these decisions are – are prior to this – the additional work you did.

June 20, 2017, First Hearing Transcript, [DN 5] at 45-46.

It would seem that this is an instance when the ALJ herself recognized the volume of medical evidence that had not been considered by the state agency physicians. Their review consisted of at most 10 pages of medical records, when Dr. Patel's treating relationship had spanned years, including the years of the closed period in question. This long-standing doctor/patient treatment relationship, coupled with the diagnostic evidence support contained in Dr. Patel's records, simply offers more insight into Plaintiff's condition during this closed period at issue. The competing non-examining state agency reviewing physician's opinion based upon scant medical records are not substantial evidence upon which to deny Plaintiff's claim for this closed period. Here, the numerous medical records, x-rays, and diagnostic tests present objective findings that are consistent with and support the treating physician Dr. Patel's opinions. The Court has reviewed the record in its entirety and finds that it was error for the ALJ to rely instead upon the opinion of Dr. Oh, the non-examining state agency physician who did not have the benefit of any of Dr. Patel's treatment records when formulating his opinion.

2.    <u>The ALJ erred in finding Plaintiff's bladder cancer to be nonsevere in the Second Decision and also failed to properly evaluate Plaintiff's symptoms from his congenital kidney impairment and renal cyst.</u>

Here, Plaintiff argues that the ALJ erred in not finding his bladder cancer to be a severe impairment in the Second Decision as she previously found it to be a severe impairment in her First Decision. As noted previously, Plaintiff suffers from a congenital kidney/bladder condition that has been the source of hospitalizations and specialized urology treatment. Plaintiff testified to the pain he has in his kidneys, frequent urination with urgency, and bleeding. These conditions are distinct from the history of bladder cancer that was at issue in this Court's previous remand. Without reiterating the previous finding in its entirety, this Court finds little difference in the ALJ's assignment of severity to bladder cancer and assignment of severity to the congenital kidney

impairment with renal cyst. As it was error for the ALJ to find that the Plaintiff suffers from the vocationally significant bladder cancer but assign no work-related limitations for urinary urgency/frequency, it too is error for the ALJ to fail to address limitations arising from what was characterized as possible bladder cancer or left renal cyst. As concluded in our prior remand, "the ALJ cannot have it both ways" when a disabling level of urinary urgency is alleged – by finding the kidney condition severe but not including limitations associated with it. Remand is necessary.

## IV. CONCLUSION

Because this case involves a closed period of May 21, 2015, to April 3, 2017, there is no new additional medical record to be developed, proof to be taken, and/or information to be gleaned about the Plaintiff's condition during that time period. The Commissioner failed to follow the treating physician rule and has already had one opportunity at remand to correct its errors and did not. The proper result in this case is a remand for calculation and payment of benefits. *Tanner v. Astrue*, 508cv208-EHJ, 2009 WL 3170463 (W.D. Ky. Sept. 29, 2009). The Court having determined that the substantial evidence does not support the Commissioner's final decision, and that "all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).

March 31, 2026

**Lanny King, Magistrate Judge**
**United States District Court**